[650 NYS2d 275]

In the Matter of William J. Connolly, an Attorney, Respondent. Grievance Committee for the Ninth Judicial District, Petitioner.

Second Department, November 18, 1996

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains *(Forrest Strauss* of counsel), for petitioner.

*William J. Connolly,* Goshen, respondent *pro se.*

**OPINION OF THE COURT**

Per Curiam.

The petition contains seven charges of professional miscon-

duct against the respondent. The Special Referee sustained Charges One through Four and Charge Six to the extent that the respondent failed to produce bank records and tax returns requested by Grievance Counsel during the investigation. The Special Referee failed to sustain the remaining charges.

Charge One alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and/or conduct that adversely reflects on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (4) and/or (8) (22 NYCRR 1200.3 [a] [4], [8]), by captioning a bank account an "escrow" account in order to prevent its invasion by potential creditors when it was not claimed to be an account containing funds belonging to a client or other third party.

From about November 1992 through April 9, 1993, the respondent and his son/partner maintained an account at the Orange County Trust which they captioned an escrow account. Both partners were signatories on that account. The respondent conceded that the subject account did not contain client funds, was not an escrow account, and was used, instead, as a partnership operating account. The respondent alleged that the account was labelled an escrow account during this period in order to prevent banks and other creditors from invading it to satisfy outstanding debts.

The respondent knew or should have known that by falsely labelling a law firm operating account as an escrow account to prevent its invasion by creditors, he was engaging in conduct involving fraud, deceit, and misrepresentation and that such conduct would reflect adversely on his fitness to practice law.

Charge Two alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and/or conduct that adversely reflects on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (4) and/or (8) (22 NYCRR 1200.3 [a] [4], [8]) by captioning a bank account as an "escrow" account to prevent its invasion by potential creditors when it was not claimed to be an account containing funds belonging to a client or other third party.

From approximately 1957 through August 22, 1994, the respondent maintained an account at a bank known as Norstar and/or Fleet Bank, captioned "William Connolly—Escrow Account." The respondent alleged that this was a personal account maintained by him for his own use and it had never contained client funds. The respondent also claimed that this

account was labelled an escrow account during the above period in order to prevent banks and/or other creditors from invading it to satisfy other outstanding debts.

Charge Three alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and/or conduct that adversely reflects on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (4) and/or (8) (22 NYCRR 1200.3 [a] [4], [8]) by captioning bank accounts as "escrow" accounts to prevent their invasion by potential creditors when they were not claimed to be accounts containing funds belonging to a client or other third party.

From approximately 1987 to 1991, the respondent maintained an account at the United Penn Bank which he designated as an escrow account. The respondent alleged that this account was opened to facilitate his application for a loan to purchase an automobile and never contained client funds. The respondent also claimed that this account was labelled an escrow account during the aforesaid period in order to prevent banks and/or other creditors from invading it to satisfy other outstanding debts.

Charge Four alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (A) (4) and/or (8) (22 NYCRR 1200.3 [a] [4], [8]) by captioning bank accounts as "escrow" accounts to prevent their invasion by potential creditors when they were not claimed to be accounts containing funds belonging to a client or other third party.

From approximately August 1987 through August 22, 1994, the respondent maintained another account at the Orange County Trust which he captioned an escrow account. The respondent conceded that this account was a personal account maintained by him which never contained client funds. The respondent also claimed that this account was labelled an escrow account during the aforesaid period in order to prevent banks and/or other creditors from invading it to satisfy other outstanding debts.

Charge Six alleged that the respondent engaged in conduct prejudicial to the administration of justice and/or conduct that adversely reflects on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (5) and/or (8) (22 NYCRR 1200.3 [a] [5], [8]) and/or DR 9-102 (H) (22 NYCRR 1200.46 [h]) by failing to cooperate with a legitimate investiga-

tion of the Grievance Committee in that he failed to produce bank records, less than seven years old, for numerous special accounts and accounts related to the operation of the respondent's law practice, and by engaging in certain other conduct, while acting in concert with his partner, designed to frustrate the Grievance Committee's investigation of this and other pending matters.

On or about July 12, 1994, the respondent was deposed by Grievance Counsel. Some two days later, Grievance Counsel forwarded copies of the exhibits marked at the deposition, with a request for additional information, including personal and partnership tax returns and specified bank records.

On or about August 26, 1994, the respondent informed the Grievance Committee that for the last three years, "the office has been running at a loss and there has been no tax, nor the need of filing". The respondent represented that he had all of the records requested but cited the excessive cost of producing them for the Grievance Committee. He offered to bring the records in for photocopying. Grievance Counsel reiterated his request for this material by letter dated August 29, 1994. The respondent forwarded a letter reiterating his prior representations without enclosing any requested documents.

Grievance Counsel and John Connolly, the respondent's son/ partner, scheduled a deposition of John Connolly for October 21, 1994, with respect to the issues raised herein as well as two pending complaints. Thereafter, the respondent and Grievance Counsel agreed to continue the respondent's deposition on October 28, 1994. He was directed to bring the missing tax returns and the bank records which he previously offered to bring in for copying.

On the morning of John Connolly's scheduled deposition, the respondent telephoned the Grievance Committee's offices to report that his son would be unable to appear as scheduled. The respondent was advised that no extension would be granted on such short notice. John, nevertheless, failed to appear. Grievance Counsel thereafter obtained both an in personam and a subpoena duces tecum, issued by this Court on October 24, 1994, compelling John to appear on November 14, 1994, with relevant bank records. The return date was adjourned to December 2, 1994 at John's request.

On or about October 26, 1994, the respondent telephoned the Grievance Committee's offices to report that he would be unable to carry the requested records to his scheduled deposition on October 28, 1994, because he was suffering from a hernia.

On October 27, the respondent sent the Grievance Committee a doctor's note and a handwritten note stating that he had all of the requested bank records dating back to 1986 but was physically unable to produce them for fear of strangulating his inguinal hernia. Instead, he offered to make them available for inspection at his office.

Due to the physical limitations claimed by the respondent and the temporary illness of Grievance Counsel, respondent's deposition did not proceed as scheduled. Grievance Counsel advised the respondent that he would be contacted in the near future.

On or about December 1, 1994, the respondent advised Grievance Counsel that John Connolly had been injured in an automobile accident and would not be able to appear on December 2, 1994, in connection with the subpoenas. Based on the respondent's representations regarding his son's medical incapacity, Grievance Counsel agreed to hold the subpoenas pertaining to John Connolly in abeyance until December 14, 1994. On or about December 13, 1994, the respondent advised Grievance Counsel that his son would be unable to appear on December 14, as a result of the injuries he suffered in the automobile accident.

On or about January 12, 1995, the Grievance Investigator stopped in at the respondent's office to make arrangements to pick up the files for inspection and copying by the Grievance Committee. After initially stating that he would need a few more days to assemble the records, the respondent informed the Grievance Investigator that he needed his original records to assist clients in preparing their tax returns and would, therefore, be unable to provide them at that time.

On or about January 21, 1995, the respondent wrote to Grievance Counsel asserting that he had already provided proof that the accounts in question have had the word "escrow" removed from their captions and stating that he would contact Grievance Counsel within the week with respect to providing his records.

The respondent knew or should have known that he was obligated to produce the aforesaid bank records and that his conduct would obstruct the petitioner's investigation of the underlying matter.

Based on the evidence adduced, the Special Referee properly sustained Charges One through Four and Charge Six, as detailed herein. The Grievance Committee's motion and the

respondent's cross motion to confirm in part and disaffirm in part are granted to that extent.

In determining an appropriate measure of discipline to impose, we have considered the respondent's age and physical infirmities along with his disciplinary history. The respondent was the subject of a Letter of Caution, dated November 5, 1992, based upon his neglect of two legal matters entrusted to him, his failure to properly communicate with his clients, and his failure to register with the Office of Court Administration. The Letter of Caution was conditioned upon respondent's either associating himself with another attorney experienced in handling estate matters or turning over the file to an experienced estate attorney within 30 days.

Under the totality of circumstances, the respondent is suspended from the practice of law for one year.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and KRAUSMAN, JJ., concur.

Ordered that the petitioner's motion and the respondent's cross motion to confirm in part and disaffirm in part the report of the Special Referee are granted to the extent that Charges One through Four and Charge Six are sustained and the motion and cross motion are otherwise denied; and it is further,

Ordered that the respondent, William J. Connolly, is suspended from the practice of law for a period of one year, commencing December 18, 1996, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of one year upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), and (c) that he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, William J. Connolly, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge,

Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.